Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000881
12-JUN-2018
08:00 AM

NO. CAAP-16-0000881

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE MATTER OF THE PROTECTIVE ARRANGEMENT
OF
FLORENCE PUANA, Respondent-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(C. NO. 14-1-0135)

SUMMARY DISPOSITION ORDER
(By: Ginoza, C.J., Fujise and Leonard, JJ.)

Petitioner-Appellant Katherine Kealoha (**Kealoha**) appeals from the Judgment (**Judgment**) dismissing Kealoha's "Petition for Protective Arrangement and for Appointment of Conservator," (**Petition**) filed on November 25, 2016 by the Probate Court of the First Circuit (**Probate Court**).[1]

Kealoha's Petition sought to establish a protective arrangement and to appoint a conservator under Hawaii Revised Statutes (**HRS**) § 560:5-401(2) (Supp. 2017) for Kealoha's grandmother, Respondent-Appellee Florence Puana (**Puana**), who at that time was ninety-five years old, because it was alleged Puana was impaired and unable to effectively manage her own affairs. Puana objected to the appointment of a conservator, and a Kokua

---

[1]    The Honorable Derrick H.M. Chan presided.

Kanawai[2] was appointed by the Probate Court.  Following the report of the Kokua Kanawai, the Probate Court entered its

---

[2]      Rule 113 of the Hawai'i Probate Rules titled "Role and Authority of Kokua Kanawai" provides, in relevant part, that:

> [a] Kokua Kanawai appointed in a protective proceeding shall serve as and shall be limited to serving as an extension of the court to conduct an independent review of the situation, to interview the respondent and the person seeking to be appointed conservator or guardian, and to report its findings and recommendations to the court.  In conservatorship proceedings, the Kokua Kanawai's duties shall include those items listed in Hawai'i Revised Statutes Section 560:5-406(c) and (d)[.]

Additionally, HRS § 560:5-406(c) and (d) (2006 and Supp. 2017) provide:

> **§560:5-406 Original petition; preliminaries to hearing.**
>
> . . .
>
> (c) Unless otherwise ordered by the court for good cause shown, the kokua kanawai shall interview the respondent in person and, to the extent that the respondent is able to understand:
>
>> (1) Explain to the respondent the substance of the petition and the nature, purpose, and effect of the proceeding;
>>
>> (2) If the appointment of a conservator is requested, inform the respondent of the general powers and duties of a conservator and determine the respondent's views regarding the proposed conservator, the proposed conservator's powers and duties, and the scope and duration of the proposed conservatorship;
>>
>> (3) Inform the respondent of the respondent's rights, including the right to employ or request that the court appoint a lawyer to consult with a lawyer at the respondent's own expense; and
>>
>> (4) Inform the respondent that all costs and expenses of the proceeding, including respondent's attorney's fees, will be paid from the respondent's estate unless the court otherwise directs.
>
> (d) In addition to the duties imposed by subsection (c), the kokua kanawai shall:
>
>> (1) Interview the petitioner and the proposed conservator, if any; and
>>
>> (2) Make any other investigation the court directs.

Judgment denying Kealoha's Petition and granting Puana an award of attorneys' fees and costs.

Kealoha now asserts two points of error. In her first point of error, Kealoha argues the Probate Court erred in denying her request for the appointment of a conservator because the Probate Court "applied 'incapacitated' instead of 'impaired' sufficient to undermine ability to manage financial affairs" as the standard to appoint a conservator. In her second point of error, Kealoha seeks plain error review of the Probate Court's award of attorneys' fees and costs to Puana.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Kealoha's points of error as follows:

(1) The Probate Court did not err in denying Kealoha's Petition to appoint a conservator because there is no evidence that the Probate Court mistakenly considered whether Puana was "incapacitated" rather than "impaired," as required by HRS § 560:5-401(2) for the appointment of a conservator, and the Probate Court did not abuse its discretion in denying the Petition.

HRS § 560:5-401 provides, in relevant part, that:

> **§560:5-401 Protective Proceeding.** Upon petition and after notice and hearing, the court may appoint a limited or unlimited conservator or make any other protective order provided in this part in relation to the estate and affairs of:
>
> . . .
>
> (2) Any individual, including a minor, if the court determines that, for reasons other than age:
>
> > (A) By clear and convincing evidence, the individual is unable to manage property and business affairs effectively because of an impairment in the ability to receive and evaluate information or to make or communicate decisions, even with the use of appropriate and reasonably available technological assistance or because of

3

> another physical, mental, or health
> impairment, or because the individual is
> missing, detained, or unable to return to
> the United States; and
>
> (B) By a preponderance of evidence, the
> individual has property that will be wasted
> or dissipated unless management is provided
> or money is needed for the support, care,
> education, health, and welfare of the
> individual or of individuals who are
> entitled to the individual's support and
> that protection is necessary or desirable
> to obtain or provide money.

Therefore, before the Probate Court could appoint a conservator, it had to first be established "[b]y clear and convicting evidence" that Puana is "unable to manage property and business affairs effectively because of an impairment in the ability to receive and evaluate information or to make or communicate decisions[.]" HRS § 560:5-401(2)(A). "The clear and convincing evidence standard requires that degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established, and requires the existence of a fact be highly probable." Kekona v. Bornemann, 135 Hawai'i 254, 263, 349 P.3d 361, 370 (2015) (citation and internal quotation marks omitted).

Kealoha's claim that the Probate Court applied the wrong standard in denying the appointment of a conservator under HRS § 560:5-401(2)(A) is unsupported by the record. Kealoha's only support for this proposition is that the Probate Court was provided with an assessment by a specialist in geriatric medicine, Dr. Patricia Blanchette (**Dr. Blanchette's Assessment**) that concluded Puana was not an "incapacitated person" and, therefore, the Probate Court must have erred by failing to determine whether Puana had an impairment under HRS § 560:5-401(2)(A). Neither the Probate Court's orders nor its Judgment indicate the Probate Court misunderstood the law, as the orders and Judgment only state that the court is denying the request for the appointment of a conservator. We find no indication in the record that the Probate Court applied the wrong standard in denying the Petition.

It appears that Kealoha's actual contention is that the Probate Court abused its discretion in finding that there was no clear and convincing evidence to support the appointment of a conservator under HRS § 560:5-401(2)(A). The only evidence before the Probate Court regarding Puana's alleged impairment consisted of statements excerpted by Kealoha from Puana's deposition in collateral litigation that Kealoha contends shows that Puana was confused regarding her financial affairs and taken advantage of by her son. From this evidence alone Kealoha asserted that Puana was "obviously impaired." The Probate Court was free to determine the appropriate weight to give Kealoha's interpretation of Puana's mental state from the deposition, considering that Kealoha is both a layperson with respect to such matters and the context out of which the Petition arose, i.e., litigation between the parties. See In re Estate of Herbert, 90 Hawai'i 443, 454, 979 P.2d 39, 50 (1999) (noting that in cases of conflicting evidence, the credibility of witnesses and the weight given to their testimony are within the province of the fact-finder and, generally, will not be disturbed on appeal). The Kokua Kanawai, a disinterested party, also reviewed the deposition transcript and found that although Puana may have been confused about certain details and dates, the deposition alone was not sufficient to indicate obvious cognitive impairment.

The remaining evidence before the Probate Court contradicts or, at the very least, does not support Kealoha's claim that Puana is impaired. Puana's medical records revealed no neurological impairment and indicated that her neuromental status was intact. In a cognitive assessment test taken by Puana on December 4, 2014, Puana's score indicated a normal performance. Dr. Blanchette's Assessment, the result of an independent medical evaluation, was conducted to evaluate Puana "with regard to her capacity to manage her personal and financial affairs." The assessment noted that Puana's ability to answer all of Dr. Blanchette's questions, including detailed questions regarding names, dates, medical conditions, and medications, was

"impressive." Puana was also able to discuss in detail her financial situation, and reasons for actions taken with respect to her trust. Dr. Blanchette's Assessment concluded that Puana's mental status is "normal."

Kealoha correctly points out that Dr. Blanchette's Assessment concluded that Puana does not meet the definition of an "incapacitated person" as defined in HRS § 560:5-102 (2006)[3] and that this is not the required finding for the appointment of a conservator by the court under HRS § 560:5-401.[4] The appointment of a conservator requires a judicial finding that "the individual is unable to manage property and business affairs effectively because of an impairment in the ability to receive and evaluate information or to make or communicate decisions[.]" HRS § 560:5-401(2)(A). Dr. Blanchette's Assessment, however, found that Puana's mental status was "normal" with respect to the purpose of the assessment to ascertain Puana's "capacity to manage her personal and financial affairs." The burden is on Kealoha to show by clear and convincing evidence that Puana requires the appointment of a conservator. Dr. Blanchette's Assessment does not support Kealoha's allegation that Puana is impaired under HRS § 560:5-401(2).

There is no substantial evidence in the record, much less clear and convincing evidence, that Puana suffers from any impairment such that she is unable to effectively manage her

---

[3]     HRS § 560:5-102 (2006) defines "incapacitated person" as:

> an individual who, for reasons other than being a minor, is unable to receive and evaluate information or make or communicate decisions to such an extent that the individual lacks the ability to meet essential requirements for physical health, safety, or self-care, even with appropriate and reasonably available technological assistance.

[4]     Kealoha's argument on appeal that Dr. Blanchette failed to adequately address the allegations regarding Puana's impairment because she made a determination regarding whether Puana was an "incapacitated person" is perplexing. Kealoha's Petition explicitly sought a finding from the Probate Court that Puana "is an incapacitated person as defined in Haw. Rev. Stat. § 560:5-102 . . . ." Although Dr. Blanchette's Assessment did not make a specific finding with respect to impairment, it was clearly relevant evidence that the Probate Court could consider in ruling on whether grounds existed for appointing a conservator.

property or business affairs. There is no substantial support in the record to suggest that Puana is not able to receive and evaluate information and to communicate her decisions. To the contrary, the evidence in the record supports the opposite finding that Puana is not impaired and no basis existed for the Probate Court to order the appointment of a conservator. The Probate Court did not abuse its discretion in so finding. Thus, we conclude Kealoha's first point of error lacks merit.

(2) Regarding Kealoha's second point of error, we decline to apply plain error review to the Probate Court's award of attorneys' fees and costs in favor of Puana. Kealoha admits this award was not challenged below with the Probate Court, but insists that justice requires our review for plain error.

In civil cases, "the appellate court's discretion to address plain error is always to be exercised sparingly." Okada Trucking Co., Ltd. v. Board of Water Supply, 97 Hawai'i 450, 458, 40 P.3d 73, 81 (2002). This court will consider a claim of plain error only when "justice so requires." Alvarez Family Trust v. Assoc. of Apartment Owners of Kaanapali Alii, 121 Hawai'i 474, 490, 221 P.3d 452, 468 (2009).

> We have taken three factors into account in deciding whether our discretionary power to notice plain error ought to be exercised in civil cases: (1) whether consideration of the issue not raised at trial requires additional facts; (2) whether its resolution will affect the integrity of the trial court's findings of fact; and (3) whether the issue is of great public import.

Id. (citations and internal quotation marks omitted).

While the first two factors are arguably met in this case, as deciding whether the Probate Court had the power to award attorneys' fees requires no additional facts and the issue is independent from the other issues in the case, the third factor is not satisfied. The issue here is not one of "great public import." In civil cases, a matter is of "great public import" "only when such issue affects the public interest." Id. at 491, 221 P.3d at 469. See Montalvo v. Lapez, 77 Hawai'i 282, 291, 884 P.2d 345, 354 (1994) (preserving the integrity of the

jury system with proper jury instruction on essential element in claims against city); <u>Fujioka v. Kam</u>, 55 Haw. 7, 9, 514 P.2d 568, 570 (1973) (the constitutionality of a statute); <u>Office of Hawaiian Affairs v. State</u>, 96 Hawaiʻi 388, 396 n.12, 31 P.3d 901, 909 n.12 (2001) (whether federal law bars the state from using money derived from its airport system to pay the Office of Hawaiian Affairs). We cannot say that requiring Kealoha to pay Puana's attorneys' fees is a matter of great public import. Based on the foregoing, we deny plain error review.

Therefore, IT IS HEREBY ORDERED that the Judgment dismissing Kealoha's Petition for Protective Arrangement and for Appointment of Conservator entered on November 25, 2016, by the Probate Court of the First Circuit, is affirmed.

DATED: Honolulu, Hawaiʻi, June 12, 2018.

On the briefs:

Kevin P.H. Sumida,
Anthony L. Wong,
Lance S. Au,
for Petitioner-Appellant.

Gerald Kurashima,
for Respondent-Appellee.

Chief Judge

Associate Judge

Associate Judge

8